CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001   Telephone: 879-1133**

*Served*
*2/27/06*
*DaB*

| Julian Gehman |
|---|

*Plaintiff*

**VS.**

Civil Action No. | 000548 M

| Daniel A. Ball |
|---|

*Defendant*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Julian Gehman |
|---|

Name of Plaintiff's Attorney

| 910 17TH Street,NW, Suite 800 |
|---|

Address

| Washington, D.C 20006 |
|---|

| (202) 223-11777 |
|---|

Telephone

By _____
Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91    **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-l 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JULIAN GEHMAN
    Vs.

SELZER GURVITCH RABIN & OBECNY CHTD et al

C.A. No.     2006 CA 000548 M

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge ROBERT E MORIN
Date:  February 9, 2006
Initial Conference: 9:30 am, Friday, May 05, 2006
Location:  Courtroom 517
         500 Indiana Avenue N.W.
         WASHINGTON, DC 20001

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JULIAN P. GEHMAN )
1615 Brookside Road )
McLean, Virginia 22101 )

06–0000548

          Plaintiff )

      v. ) Civil Action No.

SELZER GURVITCH RABIN )
& OBECNY, CHTD. )
4416 East West Highway, 4th Floor )
Bethesda, Maryland 20814 )
(301) 986-3600 )
Serve: )
Bethesda Service Company )
4416 East West Highway, 4th Floor )
Bethesda, MD 20814 )
(301) 986-3600 )

RECEIVED
Civil Clerk's Office
JAN 2 7 2006
Superior Court of the
District of Columbia
Washington, D.C.

DANIEL A. BALL )
9912 Woodford Rd. )
Potomac, MD 20854 )
(301) 986-3600 )

JAMES G. DATTARO )
8044 Hillrise Ct. )
Elkridge, MD 21075 )
(301) 986-3600 )

NEIL GURVITCH )
18 Locks Pond Ct. )
Rockville, MD 20854 )
(301) 986-3600 )

CARLTON T. OBECNY )
17719 Globe Theatre Dr. )
Olney, MD 20832 )
(301) 986-3600 )

H. MARK RABIN )
11021 Ralston Rd. )
Rockville, MD 20852 )
(301) 986-3600 )

ROBERT S. SELZER                    )
4610 Nottingham Dr.                 )
Chevy Chase, MD 20815               )
(301) 986-3600                      )
                                    )
ELYSE L. STRICKLAND                 )
13262 Styer Ct.                     )
Highland, MD 20777                  )
(301) 986-3600                      )
                                    )
BERNARD E. GOODMAN                  )
2234 Abbotsford Dr. #R16            )
Vienna, VA 22181                    )
Serve:                              )
Peterson Noll & Goodman             )
8214-C Old Courthouse Road          )
Vienna, Virginia 22182              )
(703) 442-3890                      )
                                    )
            Defendants              )
_____    )

## COMPLAINT OF LEGAL MALPRACTICE AND CONVERSION

COMES NOW the Plaintiff, and for his causes of action against the Defendants, he states as follows:

### THE PARTIES

1.     Plaintiff Julian P. Gehman is a resident of the Commonwealth of Virginia, with 1615 Brookside Road, McLean, Virginia 22101, as his principal place of residence. Plaintiff is a member of the bars of the District of Columbia and Maryland. Plaintiff has maintained his office, and practiced continuously and exclusively in the District of Columbia since becoming a lawyer in 1992.

2.     Defendant Selzer, Gurvitch, Rabin & Obecny, Chtd. ("Selzer Gurvitch") is a Maryland corporation with its office at 4416 East West Highway, 4th floor, Bethesda, Maryland 20814.    Selzer Gurvitch maintains a web site on the Internet at


www.sgrolaw.com. The registered agent for Selzer Gurvitch is Bethesda Service Company, Inc., 4416 East West Highway, 4th Floor, Bethesda, MD 20814.

3. Defendant Daniel A. Ball is a resident of the State of Maryland with 9912 Woodford Rd., Potomac, MD 20854, as his principal place of residence. Defendant Ball is a member of the bar of the District of Columbia and of counsel to Selzer Gurvitch.

4. Defendant James G. Dattaro is a resident of the State of Maryland with 8044 Hillrise Ct., Elkridge, MD 21075, as his principal place of residence. Defendant Dattaro is a member of the District of Columbia Bar Association and a member of Selzer Gurvitch.

5. Defendant Neil Gurvitch is a resident of the State of Maryland with 18 Locks Pond Ct., Rockville, MD 20854, as his principal place of residence. Defendant Gurvitch is a member of the bar of the District of Columbia and a member of Selzer Gurvitch.

6. Defendant Carlton T. Obecny is a resident of the State of Maryland with 17719 Globe Theatre Dr., Olney, MD 20832, as his principal place of residence. Defendant Obecny is a member of the bar of the District of Columbia and a member of Selzer Gurvitch.

7. Defendant H. Mark Rabin is a resident of the State of Maryland with 11021 Ralston Rd., Rockville, MD 20852, as his principal place of residence. Defendant Rabin is a member of the bar of the District of Columbia and a member of Selzer Gurvitch.

8. Defendant Robert S. Selzer is a resident of the State of Maryland with 4610 Nottingham Dr. Chevy Chase, MD 20815, as his principal place of residence.

Defendant Selzer is a member of the bar of the District of Columbia and a member of Selzer Gurvitch.

9.    Defendant Elyse L. Strickland is a resident of the State of Maryland with 13262 Styer Ct., Highland, MD 20777, as her principal place of residence. Defendant Strickland is a member of the bar of the District of Columbia and a member of Selzer Gurvitch.

10.    Defendant Bernard A. Goodman is a resident of the Commonwealth of Virginia with 2234 Abbotsford Dr. #R16, Vienna, VA 22181, as his principal place of residence. Defendant Goodman is a member of the bar of the District of Columbia and maintains his law offices at Peterson Noll and Goodman, 8214-C Old Courthouse Road, Vienna, Virginia 22182.    Defendant Goodman holds $35,097 of Plaintiff's monies in trust, on which Defendant Selzer Gurvitch has asserted an attorney's lien.

## JURISDICTION

11.    Jurisdiction of this court is founded on D.C. Code Section 11-921, DC ST § 11921.

12.    This court has personal jurisdiction under D.C. Code Section 13-423(a)(1), DC ST § 13-423(a)(1). Defendants Ball and Selzer Gurvitch transacted business in the District of Columbia by, among other things, sending their invoices and other correspondence to Plaintiff's post office box located in the District, receiving funds from Plaintiff drawn on Plaintiff's bank account located in the District and mailed to Selzer Gurvitch from the District, telephoning and receiving telephone calls from Plaintiff's office located in the District, and sending and receiving faxes and emails to and from Plaintiff's office which is located in the District. Such transaction of business in the

4

District is the subject of this lawsuit. Selzer Gurvitch and the individual Defendants who are members of Selzer Gurvitch had a duty to and failed adequately to staff and supervise Defendants Ball and Selzer Guvitch while transacting business with Plaintiff in the District.

13.    This court has personal jurisdiction under D.C. Code Section 13-423(a)(4), DC ST §§ 13-423(a)(4). Defendants Ball and Selzer Gurvitch caused tortious injury to Plaintiff in the District of Columbia by acts and omissions outside the District of Columbia by, among other things, breaching duties they owed the Plaintiff in bungling the lawsuit they filed on behalf of Plaintiff and making false and defamatory statements about Plaintiff in the United States District Court, Eastern District of Virginia, tortiously interfering with Plaintiff's attempts to hire replacement counsel and falsely asserting a lien against Plaintiff's monies. Defendant Goodman improperly holds Plaintiff's monies in the amount of $35,097, and Plaintiff suffers injury in the District thereby. Plaintiff, who has practiced law continuously and exclusively in the District since 1992, suffered injury from these torts while practicing law and otherwise in the District of Columbia. The individual Defendants are members of the bar of the District of Columbia and regularly do and solicit business in the District of Columbia and derive substantial revenue from services rendered in the District. As members of the bar of the District of Columbia, the individual Defendants have brought themselves within the personal jurisdiction of this court and may be commanded to appear in this court, which comports with notions of due process.

14.    Paragraphs 1-13 are incorporated herein by reference. This court has subject matter jurisdiction because, among other things, the parties transacted the

5

business that is the subject of this lawsuit in the District of Columbia, as alleged in paragraph 12, and Plaintiff suffered injury in the District, as alleged in paragraph 13.

## ALLEGATIONS

15.   Plaintiff hired Defendant Ball and Defendant Selzer Gurvitch to obtain rescission and return of monies that Plaintiff had invested in purported private placement securities offerings of the affiliated companies Rolltronics Corporation and Voltaflex Corporation.

16.   On or about May 28, 2004, Defendant Ball filed suit in United States District Court, Eastern District of Virginia on behalf of Plaintiff (Gehman v. Rolltronics, et al., Civil Action No. 1:04CV626) (hereinafter, the "First Lawsuit").

17.   In the First Lawsuit, Plaintiff relied on Defendant Ball to appropriately advise Plaintiff on securities laws and litigation. Defendant Ball held himself out as being an experienced securities lawyer and litigator, and as having experience with litigating in the United States District Court, Eastern District of Virginia, aka the Rocket Docket. On information and belief, Defendants Ball and Selzer Gurvitch were under staffed, which contributed to these Defendants' failure to exercise promptness and diligence throughout the First Lawsuit. Defendants Dattaro, Gurvitch, Obecny, Rabin, Selzer, Strickland, and Selzer Gurvitch failed to provide adequate staffing. Selzer Gurvitch is a small, private law firm, and each member or partner has supervisory responsibility for all matters in the firm, including the negligent or reckless conduct of Plaintiff's case by Defendants Ball and Selzer Gurvitch.

18.   Defendant Ball and Selzer Gurvitch neglected to serve the corporate defendants to the First Lawsuit and initially served only the individual defendants.

19.    Defendant Ball falsely advised Plaintiff as to when the statute of limitation period commenced.    Defendant Ball cited case law to Plaintiff that had been distinguished by the courts.

20.    The defendants to the First Lawsuit offered to settle for $40,000. Defendant Ball urged Plaintiff to accept this settlement or to make a counter offer that might have generated a slightly higher amount.    Defendant Ball became angry with Plaintiff when Plaintiff did not accept the settlement offer.

21.    Defendants Ball and Selzer Gurvitch prepared a summary judgment motion that was defective.    Ball's draft motion flouted case law holding that, in seeking rescission, an investor may not subsequently disavow the representations and warranties that he made while investing.    Defendant Ball failed to advise Plaintiff that his draft motion was contrary to case law.    Defendant Ball failed to advise that Plaintiff risked being sued by the defendants because the draft motion, if successful, could have invalidated the stock offerings.    Defendant Ball failed to advise Plaintiff sufficiently for Plaintiff to make an informed decision and instead simply urged Plaintiff to approve the draft summary judgment motion.

22.    Defendants Ball and Selzer Gurvitch breached their duties of diligence and promptness by letting one fourth of the discovery time allotted by the Rocket Docket elapse before starting any discovery and then not following through with additional discovery.    The day before the court issued its order starting discovery, Plaintiff sent Defendant Ball a series of emails outlining discovery topics and sources.    Defendant Ball ignored Plaintiff's emails and instead started a month later and after Plaintiff sent Defendant Ball the following email:

> Danny, two weeks ago I asked how long it would take to get discovery out the door. You
> said three to five hours and you could get to it in a few days. I asked you then to do the
> discovery. Now, a couple of weeks have gone by and you have done other things but not
> discovery. I must ask you once again to get out discovery to the defendants and
> subpoenas to the third party witneses [sic]. I frankly don't see what the big deal is -- this
> is not that difficult. I remain concerned that this delay in getting discovery underway is
> prejudicing the case because of the short time fuse in the rocket docket. I am also
> concerned that every step of this case has involved a negotiation with you. Your attitude
> is not appropriate. Julian

Defendant Ball disregarded Plaintiff's instructions to timely start discovery. Defendant

Ball called Plaintiff's instructions "naïve" and otherwise derided Plaintiff's instructions.

23.    When Plaintiff fired Defendant Ball on September 27, 2004, with nearly

three months of the four-month discovery period gone, Defendant Ball: (a) had served no

interrogatories or requests for admissions; (b) had taken no depositions; (c) had noticed

no depositions; (d) had not worked out a plan with defendants' counsel to depose key

defendants (all defendants were located in California which required Defendant Ball to

travel for any such depositions); (e) had held no discussions with defendants about their

incomplete document production and had prepared no motion to compel; (f) had not

worked out a plan with counsel to third party witnesses to depose those witnesses or

obtain their documents (all third party witnesses were located in California or New

York); and (e) had issued no subpoenas to third party witnesses.

24.    Defendant Ball disregarded Plaintiff's instructions to issue subpoenas to

third party witnesses. By email dated August 10, 2004, Defendant Ball said "My

paralegal and I will work on subpoenas this afternoon." By email dated September 22,

2004, Defendant Ball said, "About to set depos for California too, including the

subpoenas you have been "harping" on me to issue." When Plaintiff fired Defendant Ball

on September 27, 2004, Defendant Ball had issued no subpoenas.

8

25.    Defendant Ball recklessly or intentionally disregarded discovery rules with potentially disastrous results. Defendant Ball improperly sought to compel defendants to travel from California to the Washington DC area to be deposed when he lacked authority to do so. By email to Plaintiff dated September 22, 2004, Defendant Ball stated, "I am about to notice the depos of Sauvante and Davidson for Virginia; their lawyer wants us to go to California for those. No way." Defendant Ball scheduled the deposition of a key third party witness for four days _after_ the discovery cut-off deadline without having obtained leave of the Rocket Docket to extend the deadline. Defendant Ball could have been precluded from taking these depositions.

26.    Defendant Ball was rolling the dice as to whether he would get the first round of discovery done. Defendant Ball left no room for follow up questions or a second wave of discovery. In the Second Lawsuit, Plaintiff's follow up questions (following up on documents produced under subpoena and information provided in response to Plaintiff's initial discovery) produced key admissions that prompted settlement.

27.    Defendant Ball refused to investigate. By emails dated April 26, July 12, and August 11, 2004, Plaintiff alerted Defendant Ball to rumors that the principal promoter behind Rolltronics and Voltaflex had changed his name and otherwise concealed negative facts in his background. This was material, as Plaintiff had asked specifically about this promoter's business experience and the promoter held himself out as a successful serial entrepreneur. Ball did not make any such allegations in the complaint he prepared and he did not investigate this or pursue it in discovery. After Plaintiff fired Defendant Ball, Plaintiff investigated and learned, _inter alia_, that (a) the

promoter changed his name, (b) the promoter's wife changed her name at least twice subsequent to changing her name upon marrying the promoter, (c) when they first declared bankruptcy in 1989, they were using three different last names, one for the promoter, one for the wife and a third for their son, (d) the promoter and his wife filed personal bankruptcy at least twice, (e) in their 1989 bankruptcy, they sought to discharge debt and taxes related to a company that the promoter represented to Plaintiff as being profitable but actually lost money, (f) in one six-year period, the promoter maintained at least five separate addresses, all within a few miles of each other, (g) the promoter and associates had started a number of previously undisclosed businesses, including an astrology center, that were unprofitable and (h) the promoter and his wife were subject to previously undisclosed and substantial tax liens. Defendant Ball refused to investigate and found none of this information. In the Second Lawsuit, Plaintiff alleged this information and obtained much better results than Defendant Ball obtained.

28.  Simultaneously with firing Defendant Ball, Plaintiff engaged the law firm of Odin, Feldman and Pittleman ("OFP") to replace Defendant Ball and finish the lawsuit. OFP issued to Plaintiff an engagement letter, Plaintiff and OFP agreed on financial terms, including the amount of initial fee deposit, and OFP cleared the matter with its conflict search. However, immediately after speaking with Defendant Ball, OFP abruptly withdrew from representation. Defendant Ball knew that OFP was replacing him and that Plaintiff had formed an attorney client relationship with OFP. On information and belief, Defendant Ball tortiously interfered with Plaintiff's relationship with OFP and caused OFP to withdraw. Each member or partner of Selzer Gurvitch knew or should have known that Plaintiff fired Defendant Ball and hired OFP. Each



member or partner of Selzer Gurvitch failed adequately to supervise Defendant Ball in his tortious interference with Plaintiff's relationship with OFP.

29. When OFP withdrew, Plaintiff told Defendant Ball not to withdraw from the case so as to leave Plaintiff unrepresented, until Plaintiff could arrange for other replacement counsel. The next day, Defendant Ball disregarded Plaintiff's instruction and filed his Motion to Withdraw, intentionally seeking to leave Plaintiff unrepresented in the case which was nearing the end of discovery and approaching trial.

30. Defendant Ball thereupon filed with the court his Motion to Withdraw, which he also served on the opposing counsel. Defendant Ball's Motion to Withdraw, attached hereto as Exhibit 1, made false statements about Plaintiff, disclosed client secrets and confidences and sought to and did embarrass Plaintiff. Defendant Ball's Motion to Withdraw was vetted by the members of Selzer Gurvitch, and each member or partner knew or should have known of Ball's Motion to Withdraw and failed adequately to supervise the drafting and submission of this motion. This caused Plaintiff to hire yet additional legal counsel to advise on the ethical issues raised by Defendant Ball's Motion to Withdraw and spend yet more money and time as a result thereof.

31. After OFP withdrew, Plaintiff interviewed a number of other law firms but was unable to hire other replacement counsel to prosecute the First Lawsuit. Defendant Ball's recklessly slow conduct of discovery, resulting in little or no discovery from the defendants at an advanced stage of the case, as well as Defendant Ball's prejudicial Motion to Withdraw, dissuaded other law firms from taking the case.

32. Plaintiff thereupon sought leave of the court to dismiss the case without prejudice. The court granted such dismissal without prejudice to re-filing, on the

condition that Plaintiff must pay $3,000 to the defendants to that action if Plaintiff were to re-file the same or a similar lawsuit. At oral argument, defendants' counsel referenced Defendant Ball's allegations in his Motion to Withdraw, and persuaded the court to impose and then increase the amount that Plaintiff had to pay defendants. In the Second Lawsuit, defendants' counsel similarly referenced the fact that Plaintiff was proceeding *pro se* and Defendant Ball's allegations.

33.     On February 16, 2005, Plaintiff filed a second lawsuit in the United States District Court, Eastern District of Columbia, Gehman v. Croucher, et al., Civil Action No. 1:05cv162 (the "Second Lawsuit"). Plaintiff paid $3,000 to counsel to the defendants to the Second Lawsuit.

34.     In the Second Lawsuit, Plaintiff proceeded *pro se* and set aside and did not use Defendant Ball's defective summary judgment motion and other papers and theory. Instead, Plaintiff investigated and obtained damaging information about key defendants. Plaintiff alleged the new information obtained by investigation, subpoenaed documents from third parties and conducted prompt and aggressive discovery on the defendants (these were all things that Defendant Ball refused to do in the first lawsuit). After Plaintiff did the foregoing, the defendants offered to and did settle with Plaintiff for substantially more than what they had offered Ball in the First Lawsuit. The things that Defendant Ball refused to do in the First Lawsuit were what produced a favorable settlement in the Second Lawsuit, while the things that Defendant Ball did in the First Lawsuit did not contribute to the settlement in the Second Lawsuit.

35.     Defendant Ball's time entries for the First Lawsuit were inflated or unreasonable. Defendant Ball claimed to have spent a lot of time on the case, yet he was

seriously behind on discovery. Defendant Ball claimed to have spent a lot of time on his draft summary judgment motion, yet he willfully or recklessly disregarded four federal court cases that hold contrary to the premise of Ball's motion. Defendant Ball billed substantial amounts after he was fired and "discovered" time he had supposedly forgotten to bill. Prior to being fired, Defendant Ball did not complain to Plaintiff about Plaintiff's payment of Ball's invoices. Subsequent to being fired, Defendant Ball tried to make it seem as though Plaintiff was firing Ball because Plaintiff was welsching on Ball's bill when in fact Plaintiff fired Ball because of Ball's reckless handling of the case.

36.   While settlement of the Second Lawsuit was imminent, Selzer Gurvitch asserted an attorney's lien on $35,097 of the settlement amount via letter signed by Defendant Selzer. Defendant Goodman, who was counsel to the defendants in the First Lawsuit and the Second Lawsuit, held back $35,097, and paid to Plaintiff the remaining portion of the settlement amount. This supposed attorney's lien is improperly asserted and Defendant Goodman improperly holds the $35,097. The settlement to the Second Lawsuit is not the same cause of action as the First Lawsuit. The Second Lawsuit seeks rescission and not tort or contract damages. Plaintiff's fee agreement with Defendant Selzer Gurvitch covers only the First Lawsuit and not the Second Lawsuit and in any event does not authorize the imposition of a lien on proceeds from settlement.

37.   Defendant Selzer Gurvitch's bills to Plaintiff total in excess of $45,000 ($9,410 already paid by Plaintiff, plus $35,097 still claimed by Selzer Gurvitch, plus interest accruing monthly). This is approximately $5,000 more than the $40,000 settlement offer that Ball had urged on Plaintiff. Plaintiff was not reimbursed for the $9,410 paid to Defendant Selzer Gurvitch, and the $35,097 is held in trust subject to a

supposed lien. Plaintiff is not responsible for Defendant Selzer Gurvitch's bills, and Defendants must disgorge monies paid to them by Plaintiff, and the supposed lien on the $35,097 is invalid.

38.    Plaintiff was not reimbursed, and is entitled to compensation for the $3,000 paid upon filing the second lawsuit, the fees paid to ethics counsel occasioned by Defendant Ball's improper Motion to Withdraw, and other expenses, including for the attorney's fees and other expenses of conducting the Second Lawsuit, which were directly and/or proximately caused by Ball's torts. If Defendant Ball had acted ethically and competently in the First Lawsuit, Plaintiff would have recovered the principal amount of his investment, plus attorneys fees, costs and interest, pursuant to the Virginia Securities Act, which provides for recovery of the same.

39.    Defendants have acted with malice toward Plaintiff, including fraud, ill will, recklessness, wantonness, oppressiveness, grudge, spite, and willful disregard for the rights of Plaintiff.

40.    Plaintiff suffered severe emotional distress, anxiety, loss of sleep, inability to concentrate, and physical pain and suffering, including shingles, as a direct or proximate result of Defendant Ball's reckless and negligent conduct of the First Lawsuit, defamatory Motion to Withdraw, tortious interference and subsequent collection efforts.

### COUNT 1
### Conversion
### Against Defendant Goodman

41.    Paragraphs 1 through 40 are incorporated herein by reference.

42.    Plaintiff is the owner of and is entitled to receive and possess the $35,097, being the remaining amount of the proceeds owed to Plaintiff from settlement of the Second Lawsuit.

43.    Defendant Goodman has exercised dominion over such $35,097 in a manner which denied Plaintiff's rights to use and enjoy such monies.

44.    Defendant Goodman has refused to pay over to Plaintiff such $35,097, notwithstanding having signed a settlement agreement agreeing to the same.

45.    Defendant Goodman's act was the legal cause of Plaintiff's loss of the $35,097.

46.    Plaintiff has suffered damages by the loss of the $35,097.

**COUNT 2**
**Breach Of Common Law Fiduciary Duty**
**Against All Defendants Except Defendant Goodman (hereinafter, the "Selzer Gurvitch Defendants").**

47.    Paragraphs 1 through 46 are incorporated herein by reference.

48.    The Selzer Gurvitch Defendants owed fiduciary duties to Plaintiff, their client.

49.    Defendants Ball and Selzer Gurvitch disclosed client confidences and secrets, sought to and did embarrass Plaintiff, withdrew from the First Lawsuit improperly, breached their duty to prosecute the First Lawsuit with diligence, promptness and competence, disregarded Plaintiff's instructions, did not properly advise Plaintiff of the risks of their recommended course of action, tortiously interfered with Plaintiff's hiring of replacement counsel, and breached other duties owed to Plaintiff.

15

50.     Defendants Dattaro, Gurvitch, Obecny, Rabin, Selzer, Strickland, and Selzer Gurvitch had a duty to and willfully or recklessly failed adequately to supervise and staff Defendants Ball and Selzer Gurvitch and are directly and vicariously liable thereby.

51.     By reason of the foregoing, the Selzer Gurvitch Defendants have violated their common law fiduciary duties owed to Plaintiff.

52.     As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical pain and suffering and the services provided by the Selzer Gurvitch Defendants are devalued and worthless.

### COUNT 3
### Legal Malpractice (Negligence)
### Against The Selzer Gurvitch Defendants

53.     Paragraphs 1 through 52 are incorporated herein by reference.

54.     The Selzer Gurvitch Defendants owed the duty of due care and other duties to Plaintiff, their client.

55.     Defendants Ball and Selzer Gurvitch disclosed client confidences and secrets, sought to and did embarrass Plaintiff, withdrew from the First Lawsuit improperly, breached their duty to prosecute the First Lawsuit with diligence, promptness and competence, disregarded Plaintiff's instructions, did not properly advise Plaintiff of the risks of their recommended course of action, tortiously interfered with Plaintiff's hiring of replacement counsel, and breached other duties owed to Plaintiff.

56.    Defendants Dattaro, Gurvitch, Obecny, Rabin, Selzer, Strickland, and Selzer Gurvitch had a duty to and willfully or recklessly failed adequately to supervise and staff Defendants Ball and Selzer Gurvitch and are directly and vicariously liable for their breaches of the duty of care and other duties owed to Plaintiff.

57.    By reason of the foregoing, the Selzer Gurvitch Defendants have negligently breached their duty of due care owed to Plaintiff.

58.    As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical pain and suffering.

## COUNT 4
### Legal Malpractice (Willful Or Reckless Breach of Duty)
### Against The Selzer Gurvitch Defendants

59.    Paragraphs 1 through 57 are incorporated herein by reference.

60.    The Selzer Gurvitch Defendants owed the duty of due care and other duties to Plaintiff, their client.

61.    Defendants Ball and Selzer Gurvitch willfully disclosed client confidences and secrets, sought to and did embarrass Plaintiff and withdrew from the First Lawsuit improperly, recklessly or willfully disregarded discovery rules, willfully or recklessly prepared and urged on Plaintiff a motion that flouted federal court precedent, and otherwise willfully or recklessly breached their duty to prosecute the First Lawsuit with diligence, promptness and competence, disregarded Plaintiff's instructions, did not properly advise Plaintiff of the risks of their recommended course of action, tortiously

interfered with Plaintiff's hiring of replacement counsel, and willfully or recklessly breached other duties owed to Plaintiff.

62. Defendants Dattaro, Gurvitch, Obecny, Rabin, Selzer, Strickland, and Selzer Gurvitch had a duty to and willfully or recklessly failed adequately to supervise and staff Defendants Ball and Selzer Gurvitch and are directly and vicariously liable for their breaches of the duty of care and other duties owed to Plaintiff.

63. By reason of the foregoing, the Selzer Gurvitch Defendants have willfully or recklessly breached their duty of due care and other duties owed to Plaintiff.

64. As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical pain and suffering.

## COUNT 5
### Tortious Interference With Contract
### Against The Selzer Gurvitch Defendants

65. Paragraphs 1 through 64 are incorporated herein by reference.

66. Plaintiff had a contract with the law firm of Odin Feldman and Pittleman ("OFP") whereby OFP was to replace Defendant Ball and prosecute the First Lawsuit.

67. Defendants Ball and Selzer Gurvitch were aware of this contract and the attorney client relationship between OFP and Plaintiff.

68. On information and belief, Defendants Ball and Selzer Gurvitch intentionally persuaded OFP to breach the contract and withdraw from representation

and/or Selzer Gurvitch and the other Selzer Gurvitch Defendants failed adequately to supervise Defendants Ball and Selzer Gurvitch.

69. As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical pain and suffering.

## COUNT 6
### Tortious Interference With Economic Advantage
### Against the Selzer Gurvitch Defendants

70. Paragraphs 1 through 69 are incorporated herein by reference.

71. Plaintiff had a valid business relationship and expectancy of contract with the law firm of Odin Feldman and Pittleman ("OFP") whereby OFP was to replace Defendant Ball and prosecute the First Lawsuit.

72. Defendants Ball and Selzer Gurvitch were aware of the business relationship and expectancy and attorney client relationship between OFP and Plaintiff.

73. On information and belief, Defendants Ball and Selzer Gurvitch intentionally persuaded OFP to withdraw from representation of and the business relationship with Plaintiff, and Selzer Gurvitch and the other Selzer Gurvitch Defendants failed adequately to supervise Defendants Ball and Selzer Gurvitch.

74. As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical pain and suffering.

## COUNT 6

## Intentional Infliction Of Emotional Distress
## Against the Selzer Gurvitch Defendants

75. Paragraphs 1 through 74 are incorporated herein by reference.

76. The Selzer Gurvitch Defendants have engaged in extreme and outrageous conduct which intentionally or recklessly caused Plaintiff severe emotional distress and physical symptoms.

77. As a direct or proximate result of the acts, errors and omissions of the Selzer Gurvitch Defendants, Plaintiff has suffered financial harm and damages and emotional and physical suffering.

### RELIEF REQUESTED

78.    Plaintiff demands that Defendant Goodman pay into this court the $35,097, and that this court to disburse such funds in accordance with its adjudication of Plaintiff's dispute with the Selzer Gurvitch Defendants.

79.    By reason of the foregoing, Plaintiff is entitled to be compensated for the damages he has sustained as the direct and consequential result of the violations alleged above. Accordingly, Plaintiff demands the following as damages:

      (a)     Payment of $35,097 held by Defendant Goodman and/or this court, interest at the legal rate thereon and cancellation of Defendants' claims against Plaintiff;

      (b)     Refund of $9,410 and interest at the legal rate thereon, to be paid by the Selzer Gurvitch Defendants, as disgorgement of the fees that Plaintiff already paid to Selzer Gurvitch;

(c)     Compensatory damages as may be proven, including without limitation $3,000 paid to the defendants of the Second Lawsuit, and fees paid to special ethics counsel who advised Plaintiff on ethics issues raised by Ball's Motion to Withdraw, and interest at the legal rate thereon, to be paid by the Selzer Gurvitch Defendants;

(d)     General damages for emotional distress and pain and suffering and interest at the legal rate thereon, to be paid by the Selzer Gurvitch Defendants;

(e)     Special damages and interest at the legal rate thereon, to be paid by the Selzer Gurvitch Defendants; and

(f)     Costs plus reasonable attorneys' fees, to be paid by the Selzer Gurvitch Defendants.

80.     All of the above referenced acts, errors and omissions were willfully, deliberately and wantonly committed by the Selzer Gurvitch Defendants in gross disregard of the interests of Plaintiff. The Selzer Gurvitch Defendants acted with actual and implied malice toward Plaintiff. The Selzer Gurvitch Defendants' conduct is characterized by evil motive, intent to injure, ill will and/or fraud. Accordingly, Plaintiff demands punitive damages in an amount not less than One Million Dollars ($1,000,000).

81.     Plaintiff further demands interest on any judgment at the statutory rate, plus all costs of suit.

**JURY DEMAND**

21

Plaintiff requests a trial by jury on all Counts.

Respectfully submitted,

Julian P. Gehman, *pro se*
1909 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3279
Facsimile: (202) 263-5279
D.C. Bar No. 447673

DATED: January 27, 2006

# EXHIBIT 1

# YAHOO! MAIL

Print - Close Window

**Subject:** Counsel's Motion to Withdraw Appearance

**Date:** Tue, 5 Oct 2004 15:09:38 -0400

**From:** "Daniel A. Ball" <dball@sgrolaw.com>

**To:** "Barney Goodman" <goodmanb@petersonandbasha.com>, "Andrew Pierce" <Andrew@Pierceshearer.com>, "Julian Gehman" <juliangehman@yahoo.com>, "Gehman, Julian P." <JGehman@mayerbrownrowe.com>

Gentlemen,

Please find attached my Motion to Withdraw Appearance.

Daniel A. Ball
Selzer Gurvitch Rabin & Obecny, Chtd.
4416 East West Highway, Fourth Floor
Bethesda, Maryland 20814-4568
Direct: (301) 634-3147
Main: (301) 986-9600
Fax: (301) 986-1301
E-Mail: dball@sgrolaw.com

-----Original Message-----
**From:** canon@sgrolaw.com [mailto:canon@sgrolaw.com]
**Sent:** Tuesday, October 05, 2004 2:57 PM
**To:** Daniel A. Ball
**Subject:** Attached Image

---

**Attachments**

Files:

📎 **2062_001.pdf** (628k)

# SELZER ⊠ GURVITCH
# RABIN & OBECNY
### C H A R T E R E D

**LAW OFFICES**

4416 East West Highway
Fourth Floor
Bethesda, MD 20814-4568

301.986.9600
301.986.1301 FAX
www.sgrolaw.com

Direct Dial: 301-634-3137
jpappas@sgrolaw.com

Our Client No.
7142-1

October 5, 2004

**VIA HAND DELIVERY**

Clerk – Civil Division
US District Court for the Eastern District of Virginia
401 Courthouse Square
Alexandria, Virginia 22314

Re:  Gehman v. Rolltronics, et al.

Dear Sir/Madam:

Enclosed please find originals and one copy of Counsel's Motion to Withdraw Appearance, Exhibits, Counsel's Memorandum of Points and Authorities in Support of its Motion to Withdraw Appearance, Order, and Notice of Hearing.  Please mark the copy "filed" and return in the enclosed self-addressed stamped envelope.  Thank you.

Sincerely yours,

Jill G. Pappas
*Assistant to Daniel A. Ball*

Enclosure
cc: Daniel A. Ball, Esq.
    Bernard Goodman, Esq.
    Andrew F. Pierce, Esq.
    Julian Gehman

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

JULIAN P. GEHMAN           )
                                     )
           Plaintiff,        )
                                     )    Civil Action No. 1:04CV626
v.                               )
                                   )
ROLLTRONICS CORPORATION, et al.  )
                                   )
           Defendants.      )
                                   )
                                   )

## NOTICE OF HEARING

PLEASE TAKE NOTICE that on Friday, October 22, 2004, at 10:00 a.m. or as soon thereafter as counsel may be heard on the Court's Motions Day docket, Plaintiff's counsel will present the following Motion:

1. Counsel's Motion to Withdraw Appearance.

DATED:      October 5, 2004         Respectfully submitted,

SELZER, GURVITCH, RABIN &
OBECNY, CHTD.

Daniel A. Ball (VSB # 42054)
4416 East West Highway, 4th Floor
Bethesda, Maryland 20814
Direct: (301) 634-3147
Main: (301) 986-9600
Fax: (301) 986-1301
E-Mail: dball@sgrolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2004, I served a copy of the foregoing upon counsel for the Defendants by e-mail (.pdf) and first class mail, postage prepaid:

Julian P. Gehman          E-mail: juliangehman@yahoo.com
P.O. Box 33971            E-mail: Jgehman@mayerbrownrowe.com
Washington, DC 20033-3971

- and -

Bernard Goodman, Esq.     E-Mail: goodmanb@petersonandbasha.com
Peterson & Basha PLC
8214 C Old Courthouse Road
Vienna, Virginia 22182-3855

Andrew F. Pierce, Esq.    E-Mail: Andrew@pierceshearer.com
Pierce & Shearer, LLP
2465 E. Bayshore Road, Suite 403
Palo Alto, California 94303

Counsel for Defendants Rolltronics, VoltaFlex, Sauvante and Davidson


Daniel A. Ball

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JULIAN P. GEHMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:04CV626 |
| v. | ) |
| | ) |
| ROLLTRONICS CORPORATION, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## COUNSEL'S MOTION TO WITHDRAW APPEARANCE

COMES NOW counsel for Plaintiff, Julian P. Gehman, and moves the Court for an Order permitting Daniel A. Ball, Esq. and Selzer Gurvitch Rabin & Obecny, Chtd. to withdraw from representing Plaintiff in this case. As grounds for this Motion, Counsel states as follows:

### I.    THE CLIENT DISCHARGED HIS COUNSEL.

Plaintiff Julian P. Gehman graduated *cum laude* from Georgetown University Law Center in 1992. He is a member of the bars of the District of Columbia and the State of Maryland. He has been practicing law for twelve (12) years. He is counsel in the firm of Mayer Brown Rowe & Maw, one of the largest law firms in the world. Attached hereto as Exhibit 1 is a page from the Mayer Brown website listing Mr. Gehman's credentials.

On September 24, 2004, Mr. Gehman wrote an e-mail to the undersigned counsel, Daniel A. Ball, and instructed him to put everything on hold. On September 27, 2004,

Mr. Gehman wrote another e-mail to Mr. Ball in which he indicated that he was hiring another attorney to handle the case and instructed Mr. Ball to do nothing further in the case except send him a discovery CD.   Next, on September 29, 2004, Mr. Gehman sent yet another e-mail in which he reconfirmed his decision and gave Mr. Ball his reason for terminating Mr. Ball.  In response to these and other e-mails, Mr. Ball wrote a letter on October 1, 2004, which he sent to Mr. Gehman via his two e-mail addresses and first class mail.  A copy of the letter is attached as Exhibit 2.  Mr. Ball notified Mr. Gehman that he would be filing a motion to withdraw as counsel on Tuesday, October 5, 2004.

Pursuant to Local Rule 83.1(G), an attorney may withdraw his or her appearance upon motion to the Court and "after reasonable notice to the party on whose behalf said attorney has appeared."  Mr. Gehman received reasonable notice that Mr. Ball would withdraw from the case.   Mr. Gehman acknowledged in a subsequent e-mail that he received the e-mail letter.  Also, he was surely on notice that Mr. Ball would withdraw from the case, even prior to receiving the letter of October 1, 2004, since Mr. Gehman terminated Mr. Ball.

Prior to filing this Motion to Withdraw Appearance and despite the instruction to stop all work, Mr. Ball protected Mr. Gehman's interests on October 4, 2004, by preparing and serving Plaintiff Gehman's Objections to Defendant Rolltronics Corporation's Request for Documents. This was done because substitute counsel had not yet entered an appearance and October 4th was the deadline under the Local Rules for preserving objections. Counsel also has undertaken the task of copying all files for Mr. Gehman or his substitute counsel.

2

Rule 1.16(a)(3) of the Rules of the Supreme Court of Virginia, Part 6, § II, provides that a lawyer "shall withdraw from the representation of a client if: . . . (3) the lawyer is discharged." *See* Exhibit 3. Mr. Ball was unconditionally discharged. Withdrawal is required.

## II. THE CLIENT HAS RENDERED MR. BALL'S REPRESENTATION UNREASONABLY DIFFICULT, THEREBY REQUIRING WITHDRAWAL.

Yet, in a twist of temperament and audacity, Mr. Gehman belatedly sent an e-mail over the weekend that Mr. Ball received on Monday morning, October 4, 2004, stating that he would not consent to Mr. Ball's withdrawal until he found substitute counsel. First and foremost, Mr. Ball was told to stop all work and was discharged. Rule 1.16(a)(3) states that Mr. Ball "shall" withdraw upon being discharged. Second, the prior discharge was unconditional. The parallel is the employee who submits a letter of resignation, effective immediately, and one week later tells his employer that he insists on holding onto his job until something better comes along. Third, Mr. Ball did not consent to remain in the case as counsel until Mr. Gehman decides upon substitute counsel; nor did Mr. Ball agree, once having been discharged, that he would again represent Mr. Gehman in the case. Fourth, Mr. Gehman, a big law firm lawyer, has refused to pay Mr. Ball for past services rendered and future services rendered should he remain in the case until substitute counsel appears, whenever that may be. (*See* Section III, *infra*.) Fifth, Mr. Gehman has not cooperated with his counsel, has tied his counsel's hands, and has levied accusations and threats against Mr. Ball. Sixth, the relationship between counsel and his client has deteriorated to such an extent, and accusations and threats have been repeatedly hurled by the client, that make continued representation both

3

impossible and *not in the best interests* of Mr. Gehman. "Professional considerations require termination of the representation." *See* Exhibit 3, Comment [3] to Rule 1.16. For these reasons, Mr. Ball's representation "has been rendered unreasonably difficult by the client." Rule 1.16(b)(5) of the Rules of the Supreme Court of Virginia, Part 6, § II, provides that a lawyer may withdraw from representing a client if the representation "has been rendered unreasonably difficult by the client." *See* Exhibit 3.

### III.    THE CLIENT HAS FAILED TO HONOR HIS FINANCIAL OBLIGATIONS TO COUNSEL, REQUIRING WITHDRAWAL.

There is yet another ground for withdrawal. Mr. Gehman has failed and refused to honor his financial obligations to Mr. Ball and his firm, Selzer Gurvitch Rabin & Obecny, Chtd. Mr. Gehman signed a written retainer agreement with the firm which he has failed and refused to honor. In fact, Mr. Gehman's default covers services rendered and expenses incurred in June, July, August and September 2004. On Wednesday, September 29, 2004, at 1:53 p.m., in response to Mr. Ball's request that he be paid on prior outstanding balances and for services rendered to-date in September, Mr. Gehman emphatically wrote in an e-mail that he was not paying any of the bills. When asked by Mr. Ball to reconsider his decision, Mr. Gehman refused to pay and refused to commit to paying for services rendered. Mr. Ball cannot afford to represent Mr. Gehman for free, and Mr. Ball cannot afford to undertake motions and to schedule, serve subpoenas, prepare for, travel to and take depositions in California and on the East Coast (Northern Virginia, Long Island, NY and Boston, MA) without past and future compensation. Yet, this is what Mr. Gehman unreasonably expects Mr. Ball to do.



Rule 1.16(b)(4) of the Rules of the Supreme Court of Virginia, Part 6, § II, provides that a lawyer may withdraw his representation if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." *See* Exhibit 3. Mr. Gehman has been given a reasonable warning. Rule 1.16(b)(5) of the Rules of the Supreme Court of Virginia, Part 6, § II, permits a lawyer to withdraw if "the representation will result in an unreasonable financial burden on the lawyer." The representation has become an unreasonable financial burden upon Mr. Ball since Mr. Gehman has failed to pay for services rendered, and the representation will continue to be a financial burden given Mr. Gehman's failure and refusal to honor his past and future financial obligations.

## CONCLUSION

Mr. Ball and Selzer Gurvitch Rabin & Obecny, Chtd. have satisfied their obligations under the Local Rules of the Eastern District of Virginia, and the Rules of the Supreme Court of Virginia, including the ethical rules and guidelines, for withdrawing as counsel. Mr. Gehman's conduct in his role as a "client" is appalling and abusive of the lawyer-client relationship. He should be held to a higher standard of conduct as a "client" since he is an attorney and he knows better. Mr. Gehman's tactic as a "client" of instructing his counsel to stop all work, advising his counsel that he is terminated, refusing to pay counsel for months of services rendered, refusing to pay for future services, yet instructing his counsel to remain in this case is absurd. Mr. Gehman, a lawyer with big law firm credentials, may represent himself *pro se* or may engage

5

substitute counsel.   But undersigned counsel should be permitted to withdraw *immediately*.

For these and other such reasons, Mr. Ball and Selzer Gurvitch Rabin & Obecny, Chtd. request an Order permitting them to withdraw from the case.

Dated: October 5, 2005                    Respectfully submitted,

                                          SELZER, GURVITCH, RABIN & OBECNY,
                                          CHTD.


                                          Daniel A. Ball (VSB # 42054)
                                          4416 East West Highway, 4th Floor
                                          Bethesda, Maryland 20814
                                          Direct: (301) 634-3147
                                          Main: (301) 986-9600
                                          Fax: (301) 986-1301
                                          E-Mail: dball@sgrolaw.com

                                          Counsel for Plaintiff Julian P. Gehman

6

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2004, I served a copy of the foregoing Motion to Withdraw Appearance, Exhibits, Memorandum of Points and Authorities, Order, and Notice of Motion, upon Plaintiff Gehman and counsel for the Defendants by e-mail (.pdf) and first class mail, postage prepaid, as follows:

Julian P. Gehman, Esq.          E-mail: Juliängehman@yahoo.com
P.O. Box 33971                  E-mail: Jgehman@mayerbrownrowe.com
Washington, DC 20033-3971

    - and -

Bernard Goodman, Esq.          E-mail: goodmanb@petersonandbasha.com
Peterson & Basha PLC
8214 C Old Courthouse Rd
Vienna, VA 22182-3855

Andrew F. Pierce, Esq.          E-mail: Andrew@pierceshearer.com
Pierce & Shearer, LLP
2465 E. Bayshore Road, Suite 403
Palo Alto, California 94303


Counsel for Defendants Rolltronics, VoltaFlex, Sauvante and Davidson



Daniel A. Ball

# Exhibit
# 1

Mayer, Brown, Rowe & Maw LLP

# MAYER
# BROWN
# ROWE
# & MAW

**Julian P. Gehman**
Counsel
Washington, D.C.

jgehman@mayerbrownrowe.com

Ph: +1 202 263 3279
Fax: +1 202 263 5279



**Experience**
*Information Technology and Telecommunications:* representation of U.S. and foreign carriers before FCC •
negotiation of telecommunications and e-commerce transactions

**Employment**
Mayer, Brown, Rowe & Maw LLP, Washington, D.C., 1995 to date • Morrison & Foerster, Washington, D.C.

**Education**
Georgetown University Law Center, J.D. cum laude, 1992 • University of Southern California, B.A., 1980; Phi
Beta Kappa

**Admitted**
District of Columbia, 1995 • Maryland, 1992 • U.S. District Court for the District of Maryland, 1993

# Exhibit
# 2

## Daniel A. Ball

| | |
|---|---|
| **From:** | Jill Pappas |
| **Sent:** | Friday, October 01, 2004 4:56 PM |
| **To:** | 'JulianGehman@yahoo.com'; 'Jgehman@mayerbrownrowe.com' |
| **Cc:** | Daniel A. Ball |
| **Subject:** | Gehman v. Rolltronics et al |



Gehman.pdf (25 KB)

Mr. Gehman,

Attached please find a letter from Danny Ball.

Thank you.

Jill Pappas

Assistant to Daniel A. Ball, Esq.

Selzer Gurvitch Rabin & Obecny Chartered

4416 East West Highway, 4th Floor

Bethesda, Maryland 20814-4568

Direct Line: (301) 634-3137



SELZER & GURVITCH
RABIN & OBECNY
C H A R T E R E D

LAW OFFICES

4416 East West Highway          301.986.9600
Fourth Floor                    301.986.1301 FAX
Bethesda, MD 20814-4568         www.sgrolaw.com

Daniel A. Ball
(MD, VA, DC)

Direct Dial: 301-634-3147
dball@sgrolaw.com

Our Client No.
7142-1

October 1, 2004

**VIA FIRST CLASS MAIL
AND EMAIL**

Julian Gehman
P.O. Box 33971
Washington, DC 20033-3971
JulianGehman@yahoo.comm
Jgehman@mayerbrownrowe.com

Re: Gehman v. Rolltronics, et al.

Dear Julian:

On September 24, 2004, you told me in an e-mail to "put everything on hold." On September 27, 2004, you told me in an e-mail, "I'm hiring another attorney to handle this. Do nothing further on my matter except send the discovery CD . . . " On September 29, 2004, you sent an e-mail to me stating, "That is why I fired you."

Please be advised that on Tuesday, October 5, 2004, I will be filing a motion to withdraw as counsel even if you do not have substitute counsel by then.

Sincerely yours,

Daniel A. Ball

DAB/jp

# Exhibit
# 3

# VIRGINIA
# RULES
# ANNOTATED

Including the Rules of the Courts and Commissions
in Virginia, the Rules of the Federal Courts,
and the Rules of the Supreme Court of
the United States.

## 2004 EDITION

 LexisNexis™

s of billing records
a prepared by the
difficulties arising

w if the client refuses to
reement relating to the
agreement concerning
agreement limiting the
ation.

n Withdrawal
has been unfairly dis-
lawyer must take all
ate the consequences to
a lawyer for an organi-
unusual circumstances
o the organization after
harged by the organiza-
beyond the scope of these

ers or File When Client
Fees/Expenses Owed to

hews a "prejudice" stan-
jective and easily-applied
inds of documents in the

ison
tantially the same as DR

stantially similar to DR
that a lawyer "may with-
a client if: (1) Withdrawal
material prejudice to the
t persists in a course of
awyer's services that the
es is illegal or unjust; or (3)
an obligation to the lawyer
services and such failure
le notice to the client; or (4)
result in an unreasonable
lawyer or has been ren-
cult by the client."
ical to DR 2-108(C).
1 on DR 2-108(D), but does
in the lawyer's files (which
graph (e).

ary
2-108 of the Virginia Code
Model Rule 1.16 than from
BA Model Code, DR 2-110.
ittee generally adopted the
substituted the "illegal or
R 2-108(B)(2) for the "crim-
iguage of the ABA Model
Committee substituted the
) for that of paragraph (c) of
make it clear that a lawyer,
ring court proceedings, has
request leave of court to
ittee recommended para-
rejudice" standard as being
and applied by lawyers.

For this Rule as in effect on January 1, 2004,
see the following rule, also numbered 1.16.

## CASE NOTES

**Discharged attorney may recover reason-
able value of services.** — That the client may at
any time, for any reason or without any reason,
discharge his attorney, is a firmly-established rule.
The attorney may recover the reasonable value of
the services which he has rendered, but he cannot
recover for damages for the breach of contract. The
discharge of the attorney by his client does not
constitute a breach of the contract, because it is a
term of such contract, implied from the peculiar
relationship which the contract calls into existence,
that the client may terminate the contract at any
time with or without cause. Heinzman v. Fine, Fine,
Legum & Fine, 217 Va. 958, 234 S.E.2d 282 (1977),
decided under former DR 2-110.

**Discharged attorney entitled to quantum
meruit recovery and lien for fees.** — When an
attorney employed under a contingent fee contract
is discharged without just cause and the client
employs another attorney who effects a recovery,
the discharged attorney is entitled to a fee based
upon quantum meruit for services rendered prior to
discharge and, as security for such fee, to the lien
granted by former § 54-70 (see now § 54.1-3932).
Heinzman v. Fine, Fine, Legum & Fine, 217 Va.
958, 234 S.E.2d 282 (1977), decided under former
DR 2-110.

## Rule 1.16. (Effective January 1, 2004) Declining Or Terminating Representation.

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where
representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or
other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability
to represent the client; or

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a
client if withdrawal can be accomplished without material adverse effect on the
interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the
lawyer reasonably believes is illegal or unjust;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant
or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the
lawyer's services and has been given reasonable warning that the lawyer will
withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer
or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

(c) In any court proceeding, counsel of record shall not withdraw except by leave of
court after compliance with notice requirements pursuant to applicable Rules of Court.
In any other matter, a lawyer shall continue representation notwithstanding good
cause for terminating the representation, when ordered to do so by a tribunal.

(d) Upon termination of representation, a lawyer shall take steps to the extent
reasonably practicable to protect a client's interests, such as giving reasonable notice
to the client, allowing time for employment of other counsel, refunding any advance
payment of fee that has not been earned and handling records as indicated in
paragraph (e).

(e) All original, client-furnished documents and any originals of legal instruments
or official documents which are in the lawyer's possession (wills, corporate minutes,
etc.) are the property of the client and, therefore, upon termination of the represen-
tation, those items shall be returned within a reasonable time to the client or the
client's new counsel upon request, whether or not the client has paid the fees and costs
owed the lawyer. If the lawyer wants to keep a copy of such original documents, the
lawyer must incur the cost of duplication. Also upon termination, the client, upon
request, must also be provided within a reasonable time copies of the following
documents from the lawyer's file, whether or not the client has paid the fees and costs
owed the lawyer: lawyer/client and lawyer/third-party communications; the lawyer's
copies of client-furnished documents (unless the originals have been returned to the

Pt. 6, § II, Rule 1.16     RULES OF SUPREME CT. OF VA.     392     393

client pursuant to this paragraph); transcripts, pleadings and discovery responses; working and final drafts of legal instruments, official documents, investigative reports, legal memoranda, and other attorney work product documents prepared or collected for the client in the course of the representation; research materials; and bills previously submitted to the client. Although the lawyer may bill and seek to collect from the client the costs associated with making a copy of these materials, the lawyer may not use the client's refusal to pay for such materials as a basis to refuse the client's request. The lawyer, however, is not required under this Rule to provide the client copies of billing records and documents intended only for internal use, such as memoranda prepared by the lawyer discussing conflicts of interest, staffing considerations, or difficulties arising from the lawyer-client relationship. The lawyer has met his or her obligation under this paragraph by furnishing these items one time at client request upon termination; provision of multiple copies is not required. The lawyer has not met his or her obligation under this paragraph by the mere provision of copies of documents on an item-by-item basis during the course of the representation.

## COMMENT

[1] A lawyer should not accept or continue representation in a matter, unless it can be performed competently, promptly, without improper conflict of interest and to completion.

*Mandatory Withdrawal*

[2] A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law. The lawyer is not required to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.

[3] When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.

*Discharge*

[4] A client has a right to discharge a lawyer at any time, with or without cause. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.

[5] Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to proceed pro se.

[6] If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. See Rule 1.14.

*Optional Withdrawal*

[7] A lawyer may withdraw from representation

in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is illegal or unjust, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer's services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on a repugnant or imprudent objective.

[8] A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

*Assisting the Client upon Withdrawal*

[9] Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. Whether or not a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization's highest authority is beyond the scope of these Rules.

*Retention of Client Papers or File When Client Fails or Refuses to Pay Fees/Expenses Owed to Lawyer*

[10] Paragraph (e) eschews a "prejudice" standard in favor of a more objective and easily-applied rule governing specific kinds of documents in the lawyer's files.

[11] The requirements of paragraph (e) should not be interpreted to require disclosure of materials where the disclosure is prohibited by law.

*Virginia Code Comparison*

Paragraph (a) is substantially the same as DR 2-108(A).

Paragraph (b) is substantially similar to DR 2-108(B) which provided that a lawyer "may withdraw from representing a client if: (1) Withdrawal can be effected without material prejudice to the client; or (2) The client persists in a course of conduct involving the lawyer's services that the lawyer reasonably believes is illegal or unjust; or (3) The client fails to fulfill an obligation to the lawyer

regarding the lawyer continues after reason The representation w financial burden on t dered unreasonably d Paragraph (c) is ide Paragraph (d) is ba not address document are handled under pa Paragraph (e) is ne Committee Comme The provisions of D derived more from AF

For this Rule as 2004, see the precedi The amendment adopted September inserted "therefore, u sentation, those item

Rule 1.17. (Effe A lawyer or a la including good w

(a) The seller in which the pra

(b) Actual wri defined by the te

(1) the propos

(2) any propos arrangement;

(3) the client's matter, and that notice;

(4) the client'

(5) the fact th will be presume within ninety (9

(c) If a client tion of that clien authorizing by camera informa obtain an order

(d) The fees c

[1] The practice of a business. Clients s purchased and sold when a lawyer or a and another lawyer tation, the selling l pensation for the re may withdrawing p 5.4 and 5.6.

*Termination of P*

[2] The fact that decide not to be re take their matters violation. Neither d practice after the pated change in cir For example, a law

d discovery responses;
, investigative reports,
s prepared or collected
a materials; and bills
bill and seek to collect
e materials to refuse the client's
sis to provide the client
internal use, such as
rest, staffing consider-
p. The lawyer has met
tems one time at client
quired. The lawyer has
e provision of copies of
representation.

s. The lawyer has the option
n be accomplished without
ct on the client's interests.
stified if the client persists in
at the lawyer reasonably be-
njust, for a lawyer is not
ted with such conduct even if
urther it. Withdrawal is also
er's services were misused in
ould materially prejudice the
so may withdraw where the
pugnant or imprudent objec-

thdraw if the client refuses to
an agreement relating to the
as an agreement concerning
r an agreement limiting the
esentation.

: upon Withdrawal
wyer has been unfairly dis-
nt, a lawyer must take all
mitigate the consequences to
or not a lawyer for an organi-
ertain unusual circumstances
ion to the organization after
g discharged by the organiza-
ty is beyond the scope of these

*Papers or File When Client
Pay Fees/Expenses Owed to*

) eschews a "prejudice" stan-
re objective and easily-applied
fic kinds of documents in the

ents of paragraph (e) should
require disclosure of materials
is prohibited by law.
parison
ubstantially the same as DR

substantially similar to DR
ded that a lawyer "may with-
ing a client if: (1) Withdrawal
out material prejudice to the
ient persists in a course of
ie lawyer's services that the
lieves is illegal or unjust; or (3)
fill an obligation to the lawyer

regarding the lawyer's services and such failure
continues after reasonable notice to the client; or (4)
The representation will result in an unreasonable
financial burden on the lawyer or has been ren-
dered unreasonably difficult by the client."
Paragraph (c) is identical to DR 2-108(C).
Paragraph (d) is based on DR 2-108(D), but does
not address documents in the lawyer's files (which
are handled under paragraph (e).
Paragraph (e) is new.
**Committee Commentary**
The provisions of DR 2-108 of the Virginia Code
derived more from ABA Model Rule 1.16 than from

its counterpart in the ABA Model Code, DR 2-110.
Accordingly, the Committee generally adopted the
ABA Model Rule, but substituted the "illegal or
unjust" language from DR 2-108(B)(2) for the "crim-
inal or fraudulent" language of the ABA Model
Rule. Additionally, the Committee substituted the
language of DR 2-108(C) for that of paragraph (c) of
the ABA Model Rule to make it clear that a lawyer,
in circumstances involving court proceedings, has
an affirmative duty to request leave of court to
withdraw. The Committee recommended para-
graph (e) instead of a "prejudice" standard as being
more easily understood and applied by lawyers.

---

**For this Rule as in effect until January 1,**
**2004,** see the preceding Rule, also numbered 1.16.
**The amendment effective January 1, 2004,**
adopted September 24, 2003, in paragraph (e),
inserted "therefore, upon termination of the repre-
sentation, those items," "within a reasonable time"

and "or the client's new counsel" in the first sen-
tence; inserted "also upon termination, the client"
preceding, and deleted "the client" following, "upon
request," inserted "within a reasonable time," in-
serted "transcripts" and "or collected" in the third
sentence; and added the sixth sentence.

## Rule 1.17. (Effective until January 1, 2004) Sale Of Law Practice.

A lawyer or a law firm may sell or purchase a law practice, partially or in its entirety,
including good will, if the following conditions are satisfied:

(a) The seller ceases to engage in the private practice of law in the geographic area
in which the practice has been conducted.

(b) Actual written notice is given by the seller to each of the seller's clients (as
defined by the terms of the proposed sale) regarding:

(1) the proposed sale and the identity of the purchaser;

(2) any proposed change in the terms of the future representation including the fee
arrangement;

(3) the client's right to consent or to refuse to consent to the transfer of the client's
matter, and that said right must be exercised within ninety (90) days of receipt of the
notice;

(4) the client's right to retain other counsel and/or take possession of the file; and

(5) the fact that the client's refusal to consent to the transfer of the client's matter
will be presumed if the client does not take any action or does not otherwise consent
within ninety (90) days of receipt of the notice.

(c) If a client involved in a pending matter cannot be given notice, the representa-
tion of that client may be transferred to the purchaser only upon entry of an order so
authorizing by a court having jurisdiction. The seller may disclose to the court in
camera information relating to the representation only to the extent necessary to
obtain an order authorizing the transfer of a file.

(d) The fees charged clients shall not be increased by reason of the sale.

### COMMENT

[1] The practice of law is a profession, not merely
a business. Clients are not commodities that can be
purchased and sold at will. Pursuant to this Rule,
when a lawyer or an entire firm ceases to practice
and another lawyer or firm takes over the represen-
tation, the selling lawyer or firm may obtain com-
pensation for the reasonable value of the practice as
may withdrawing partners of law firms. See Rules
5.4 and 5.6.
*Termination of Practice by Seller*
[2] The fact that a number of the seller's clients
decide not to be represented by the purchaser but
take their matters elsewhere does not result in a
violation. Neither does the seller's return to private
practice after the sale as a result of an unantici-
pated change in circumstances result in a violation.
For example, a lawyer who has sold the practice to

accept an appointment to judicial office does not
violate the requirement that the sale be attendant
to cessation of practice if the lawyer later resumes
private practice upon leaving the office.
[3] The requirement that the seller cease to
engage in the private practice of law in the geo-
graphic area does not prohibit employment as a
lawyer on the staff of a public agency or a legal
services entity which provides legal services to the
poor, or as in-house counsel to a business.
[4] ABA Model Rule Comment not adopted.
[5] ABA Model Rule Comment not adopted.
*Client Confidences, Consent and Notice*
[6] Negotiations between seller and prospective
purchaser prior to disclosure of information relat-
ing to a specific representation of an identifiable
client no more violate the confidentiality provisions

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| JULIAN P. GEHMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:04CV626 |
| v. | ) | |
| | ) | |
| ROLLTRONICS CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO WITHDRAW APPEARANCE

For reasons set forth in Counsel's Motion to Withdraw Appearance, and in reliance upon the following points and authorities, Daniel A. Ball, Esq. and Selzer Gurvitch Rabin & Obecny, Chtd. request that they be allowed to withdraw from this case.

1.  Local Rule 83.1(G) of the United States District Court for the Eastern District of Virginia.

2.  Rule 1.16(a)(3) of the Rules of the Supreme Court of Virginia, Part 6, § II.

3.  Rule 1.16(b)(5) of the Rules of the Supreme Court of Virginia, Part 6, § II.

4.  Rule 1.16(b)(4) of the Rules of the Supreme Court of Virginia, Part 6, § II.

5.  Comment [3] to Rule 1.16.

6.  For good cause shown.

Dated: October 5, 2005

Respectfully submitted,

SELZER, GURVITCH, RABIN & OBECNY, CHTD.

Daniel A. Ball (VSB # 42054)

4416 East West Highway, 4th Floor
Bethesda, Maryland 20814
Direct: (301) 634-3147
Main: (301) 986-9600
Fax: (301) 986-1301
E-Mail: dball@sgrolaw.com

Counsel for Plaintiff Julian P. Gehman

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| JULIAN P. GEHMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:04CV626 |
| v. | ) | |
| | ) | |
| ROLLTRONICS CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## O R D E R

UPON CONSIDERATION of Counsel's Motion to Withdraw Appearance as attorney for the Plaintiff, Julian P. Gehman, and for good cause shown, it is this _____day of _____, 2004 by the United States District Court for Eastern District of Virginia (Alexandria Division) hereby

**ORDERED**, that counsel's Motion to Withdraw Appearance be, and the same hereby is, **Granted.** The appearance of Daniel A. Ball, Esq. and Selzer Gurvitch Rabin & Obecny, Chtd. are hereby deemed withdrawn from this case.

_____
**UNITED STATES DISTRICT COURT**